BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1910.

---

## JOHN M. CANTERBURY, Respondent, v. KANSAS CITY, Appellant.

**Kansas City Court of Appeals, October 3, 1910.**

1. **CITIES: Ice and Snow: Sidewalks.** A city is liable for injuries sustained by a pedestrian, upon its sidewalk covered by rough and uneven ice, so rounded up, or at such an incline, as to make it an obstruction and to cause it to be unsafe for travel with the exercise of ordinary care.

2. ———. When snow and ice are permitted to accumulate upon a sidewalk of a city, and to remain there until, by the thawing and freezing, they become an obstruction and the sidewalk unsafe for travel, and the city has knowledge thereof for a sufficient length of time, before the accident and injury occurs to one travelling thereon in the exercise of ordinary care, to remove the obstruction and fails to do so, it will be held to respond in damages for the injury.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

AFFIRMED.

149 App.]                    ( 520 )

*John T. Harding, James E. Nugent* and *Hunt C. Moore* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence at the close of plaintiff's testimony and at the close of all the testimony, for the reason: (a) That the fall of plaintiff's wife occurred in broad daylight and the obstruction which plaintiff's wife claims caused the fall was in full view of her. There was nothing to distract her attention. In fact, she states that she saw the obstruction of which complaint is made and attempted to pass over it and fell, and we contend she was guilty of negligence *per se.* City of Quincy v. Barter, 81 Ill. 300; City of Erie v. Magill, 101 Pa. St. 616; Coffey v. Carthage, 186 Mo. 585; Heberling v. Warrensburg, 103 S. W. 36; Womack v. St. Joe, 168 Mo. 241; Sindlinger v. Kansas City, 126 Mo. 315; Boyd v. Springfield, 62 Mo. App. 456; Cohn v. Kansas City, 108 Mo. 393; Ray v. Poplar Bluff, 70 Mo. App. 261; Woodson v. Kansas City et al., 123 S. W. 820; Wilson v. Charleston, 8 Allen 137; Centralia v. Crouse, 64 Ill. 19; Durkin v. Troy, 61 Barb., 437; Wheat v. St. Louis, 179 Mo. 572; Yahn v. Ottumwa, 60 Ia. 429; Kaiser v. St. Louis, 185 Mo. 374.

*Battle McCardle* and *John C. Stearns* for respondent.

(1) A pedestrian must be safeguarded in crossing a sidewalk the same as in traveling lengthwise thereon. Powers v. City of St. Joseph, 91 Mo. App. 54; Bentley v. Tel. Co., 125 S. W. 533. (2) A pedestrian has a right to leave a sidewalk and to get upon it at a point other than at a public crossing. A court by an instruction may not declare it negligence *per se.* Plummers v. Milan, 79 Mo. App. 439. (3) It is not contributory negligence for one to walk along a sidewalk known to him to have a dangerous obstruction therein. Nor does the law preclude a recovery in a case where it is shown

that by taking the other side of the street the pedestrian might easily have avoided the accident. Graney v. City of St. Louis, 141 Mo. 180. (4) It is the duty of a city to keep its streets in a reasonably safe condition for public travel, and this includes the space between the sidewalk and the street curbing, which should be kept free from obstruction, or the city will be liable. Fockler v. City of Kansas City, 94 Mo. App. 464; Coffee v. City of Carthage, 186 Mo. 573; Haxton v. City of Kansas City, 190 Mo. 53.

JOHNSON, J.—This is a suit prosecuted against the defendant city for damages resulting to plaintiff from personal injuries sustained by his wife in consequence of the negligence of the defendant. The cause was here before on the appeal of plaintiff from a judgment sustaining a motion for a new trial filed by defendant and we affirmed that judgment (130 Mo. App. 1). Another trial resulted in a verdict and judgment for plaintiff for $500, and the cause now is before us on the appeal of defendant whose sole contention is that the jury should have been peremptorily instructed to return a verdict for defendant.

The injury occurred on the morning of January 18, 1905, at the west end of the Twelfth street cable line in Kansas City, which then was at Sixteenth and Genesee streets. Plaintiff's wife, an elderly and heavy woman, was injured at that corner while en route by cable car to Armourdale. To take that trip she had to transfer from the Twelfth street line to the Armourdale line, the northern or eastern terminus of which was at Sixteenth and Wyoming streets, one block east of Genesee street. The Twelfth street cars made a loop around the corner of Sixteenth and Wyoming streets, but according to the evidence of plaintiff, the end of the line was at Sixteenth and Genesee streets and all passengers were expected to leave the cars at that point. Ordinarily passengers for Armourdale walked from Genesee street

to Wyoming street. The point where the cars stopped to discharge passengers was in Genesee street about one hundred feet north of Sixteenth street. The car which carried the wife of plaintiff stopped there and she alighted and proceeded to follow what the evidence of plaintiff depicts as the beaten path of Armourdale passengers. It was the custom of such passengers to go to the nearest sidewalk, *i. e.,* that on the west side of Genesee street, and thence go south to the corner of Sixteenth street. That sidewalk was along the east side of the stockyards. The sidewalk space was twelve feet wide and the sidewalk proper which occupied the middle of the space was six feet wide, and the space between it and the curb was a parkway three feet wide. Seven inches of snow had fallen about three weeks before the injury and during the intervening period there had been more snow and some freezing and thawing weather. The snow had been cleaned off the pavement of Genesee street and some had been banked up along the curb on the west side. The sidewalk had not been cleaned and the alternate thawing and freezing combined with the use of the way by many pedestrians had given the sidewalk an uneven and lumpy covering of ice and snow and slush. Mrs. Canterbury stepped upon the curb and took another step forward toward the sidewalk. She states, "I seen I was in a bad place—it was so snowy and icy and I stood and looked for a minute before I started to go and then I made the next step with my right foot and it slipped and I fell." "Q. Where did you put your right foot? A. In the center of the sidewalk almost."

The evidence of defendant is to the effect that she fell while attempting to step up on the curb, but for the purposes of our discussion we shall assume that she fell after reaching the sidewalk proper as she states she did. There is evidence to the effect that some Armourdale passengers would ride around on the Twelfth street cars to the corner of Wyoming street, but the weight of evidence is that the street railway company through its

conductors announced the stopping place on Genesee street as the "end of the line," and that the great majority of the passengers were in the habit of leaving the cars at that place.

A settled rule applicable to this case is stated as follows in the syllabus of Reno v. City, 169 Mo. 642: "A city is not liable for accidents occasioned by the mere slipperiness caused by ice upon its sidewalk, but if the ice is so rough or uneven, or so rounded up, or at such an incline as to make it an obstruction, and to cause it to be unsafe for travel with the exercise of ordinary care, then it is liable for injuries sustained by a pedestrian under such circumstances. Or when snow and ice are permitted to accumulate upon a sidewalk of a city, and are permitted to remain there until by the thawing and freezing they become an obstruction and the sidewalk unsafe for travel, and the city has knowledge thereof for a sufficient length of time before an accident and injury occurs to one traveling thereon in the exercise of ordinary care, to remove the obstruction and fails to do so, it will be held to respond in damages for the injury."

Measured by this rule the evidence of plaintiff accuses defendant of negligence in permitting snow and ice to become and remain an obstruction in the sidewalk of a public street after it should have been removed had reasonable care been observed, and, since Mrs. Canterbury was a pedestrian using that sidewalk and was injured by that obstruction, plaintiff has a good cause of action against defendant unless we should be compelled to announce his wife guilty in law of contributory negligence. We think all the facts and circumstances of the situation present her conduct as an issue of fact for the jury to determine. She had a right to leave the street car at a regular stopping place and to travel in the most direct way to the nearest sidewalk. It was the business of the city to exercise reasonable diligence to acquaint itself with the usages and practices of the

Canterbury v. Kansas City.

public using that street and we assume that defendant knew the place the railway company had selected and was using as the terminus of its line and also knew of the practice of passengers to use the path followed by Mrs. Canterbury in the present instance. Such passengers had a right to presume that the city would perform its duty and that the path would be free from pitfalls and obstructions and, while plaintiff's wife was required to make reasonable use of her senses for her own protection, she was not precluded in law from using an obstructed way unless the obstruction was of such a nature that it was, and appeared to be imminently dangerous. As to the obstructions of a less dangerous appearance, the question to be determined was whether or not an ordinarily careful and prudent person in the situation of the pedestrian would have concluded that by using reasonable care he could pass it in safety. That was a question of fact for the jury to solve.

We do not agree with defendant that Mrs. Canterbury was culpable in law for not walking down the roadway for vehicles, which had been cleaned of snow and ice. The sidewalks are always provided for the use of pedestrians and in these days of rapid vehicles, the pavements of streets in large cities are not places for pedestrians to linger, especially if they happen to be old and stout. Mrs. Canterbury should not be criticised adversely for making a bee line for the nearest sidewalk. Nor do we find any merit in the argument that she should have remained on the car until it went around to Wyoming street. Her implied contract with the carrier required her to leave the car at the end of the line. She did that and was entitled to have a reasonably safe street to travel over.

The demurrer to the evidence was properly overruled. The judgment is affirmed. All concur.